# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| **MARY KAY INC.,** | § | |
| Plaintiff, | § | **Case No. 3:21-cv-00369-B** |
| | § | |
| **v.** | § | |
| | § | **JURY DEMAND** |
| **DUNG THAN VU and LOAN** | § | |
| **NGUYEN,** | § | |
| Defendants. | § | |

## DEFENDANTS' ORIGINAL ANSWER, COUNTERCLAIMS, and Rule 12b6 MOTION TO DISMISS

**NOW COME DUNG THAN VU and LOAN NGUYEN,** Defendants in the above-styled cause, and file this original answer to Plaintiff's Complaint ("Complaint") filed by Plaintiff Mary Kay, Inc. ("Plaintiff"), responding to each of its allegations with the corresponding numbered statements below, and asserting counterclaims, including class action and federal anti-trust claims:

## I.      ANSWER TO INDIVIDUAL ALLEGATIONS

1.      Defendants have no knowledge of how the Plaintiff is arranged and as such, cannot admit the allegation and deny it.

2.      Admitted.

3.      Admitted

## "JURISDICTION"

4.      Plaintiff's allegations regarding jurisdiction are legal assertions and arguments not subject to factual denial.

5.      Defendants deny the facts alleged in this paragraph.

## "VENUE"

6.      Denied. Even accepting Mary Kay's allegations, venue in this district is improper based only on Mary Kay's purchase into the State of Texas.

## "FACTUAL ALLEGATIONS"

7.      Defendants admit Mary Kay sells cosmetics but must deny the rest of the allegations stated for lack of knowledge of such allegations.

8.      Denied. Mary Kay does not ensure that customers only receive products that meet any particular standard, in that Mary Kay does very little to 'ensure' the quality of products once they leave the possession of Mary Kay, beyond that of harassing lawsuits.

9.      Denied. Mary Kay "ensures" nothing by its distributor arrangement. Many online sources reveal the failure of Mary Kay to thwart sales outside its network of distributors. As an example, Ebay website listed over 47,500 Mary Kay products at this Answer's filing, not one of which is authorized by Mary Kay. The Mary Kay network and its attendant "Consultant Obligations" control and ensure nothing, as all of the 47,500 products for sale on Ebay are the result of the failure of such

obligations. Amazon also has more than 6,000 non-book listings for Mary Kay, presumably offerings which are unauthorized by Mary Kay. Many other sources exist, all of which reveal the paucity of Mary Kay's control.

10.    Defendants are unknowledgeable regarding the trademark history of Mary Kay, and thus must deny the alleged facts.

11.    Defendants are unknowledgeable regarding the trademark history of Mary Kay, and thus must deny the alleged facts.

12.    Defendants deny that Mary Kay's trademark rights extend to a legal right to control all sales of all Mary Kay products for all time in all ways and all purposes, ignoring First Sale Doctrine and common sense. Defendants assert that its behavior constitutes trademark abuse and warrants the cancellation of its mark, and thus must deny that Mary Kay's marks have any validity at all.

13.    Defendants are unaware of the extent to which Mary Kay's trademarks are used and deny that Mary Kay markets the Mary Kay Registered Trademarks.

14.    Defendants are unaware of the value of the Mary Kay Registered Trademarks based on any recognized source of high-quality products, and absolutely deny that such products' value is based on any exclusive distribution.

**"Online Marketplaces and the Threat They Pose to Mary Kay's Quality Controls, Reputation, and Goodwill"**

15.    Defendants are unknowledgeable regarding the stated e-commerce statistics and therefore must deny the alleged facts.

16.     Defendants are unknowledgeable regarding the stated e-commerce statistics and therefore must deny the alleged facts.

17.     Defendants are unknowledgeable regarding any difficulty manufacturers face regarding quality control therefore must deny the alleged facts.

18.     Denied for lack of knowledge.

19.     Denied for lack of knowledge.

20.     Denied for lack of knowledge.

21.     Denied for lack of knowledge.

22.     Denied for lack of knowledge.

23.     Denied for lack of knowledge.

24.     Defendants deny the existence of any such serious health risks when products are sold outside of Mary Kay's sales channels.

25.     Denied for lack of knowledge.

26.     Denied for lack of knowledge.

27.     Denied for lack of knowledge.

28.     Denied for lack of knowledge.

29.     Denied for lack of knowledge.

30.     Denied for lack of knowledge.

31.     Denied for lack of knowledge.

**"Mary Kay Prohibits Sales on Online Marketplaces, Exercises Strict Quality Controls over the Production and Distribution of Its Products, and Provides a Satisfaction Guarantee for Products Purchased from Consultants"**

32.    Denied. See Defendant's answer to paragraph 9 for obvious evidence which undeniably shows that Mary Kay's products are sold through many sales channels other than Mary Kay's authorized distributor network.

33.    Denied.

34.    Denied. Mary Kay controls only the first sale of its products and depends only on a bare contractual duty borne by Mary Kay distributors to enforce quality controls, which distributors frequently abandon. All of the Mary Kay products sold on Ebay, Amazon, and every other unauthorized site are the product of a distributor abandoning the Consultant Obligations.

35.    Denied. The majority of Mary Kay products sold on third-party marketplaces is not of significantly lower quality than those sold through Mary Kay's official sales channels.

36.    Denied. See answer to paragraph 34, incorporated here. Mary Kay's distributors agree to follow rules laid down by Mary Kay primarily to protect the sales channel for Mary Kay products, and not to maintain any illusion of integrity and quality of Mary Kay products.

37.    Denied. All reasonable people using cosmetics will readily agree that brand new Mary Kay product kept in a hot car will be ruined, even if the product is new;

they will also agree that properly stored cosmetics will last more than three years. Defendants deny any set standard three-year shelf life or expiration date indicated on the product packaging generally. Defendants contend that consultants routinely have no idea what the expiration date is for the products they sell. The instructions allegedly given to consultants are mere excuses to claim the existence of a quality control system that is little more than paper support for lawsuits like this one.

38.    Defendants cannot answer for what Mary Kay consumers have "come to expect," but based on the empirical evidence which the Court is invited to take notice of, it appears that consumers expect to be able to purchase Mary Kay products on Ebay, Amazon, and a host of other sources which any consumer can find in seconds.

39.    Defendants deny that Mary Kay consultants have any special knowledge necessary to safely sell Mary Kay products to a consumer.

40.    Denied. The purpose of Mary Kay's restrictions on third-party sales of its products are not to ensure any kind of quality control, but to protect its own sales channel and prevent competition, as stated in paragraph 36 herein.

41.    Denied. Mary Kay's money back guarantee does not extend to its consultants, who are stuck with cosmetic product after they cease to be distributors. Mary Kay's no-return policy leads to ex-consultant sales to non-consultant sales. Mary Kay could prevent all third-party sales by simply allowing

its consultants to return unwanted product, but it does not.

42.     Denied. Many sellers of Mary Kay products give the same money-back guarantee that Mary Kay provides.

**"Mary Kay's Discovery of Defendants' Sales of Mary Kay Products on the Internet"**

43.     Denied. The third-party sale of Mary Kay products does not threaten the safety of consumers.

44.     Denied. Defendants have no knowledge of what kind of investigation Mary Kay conducted.

45.     Defendants admit the operation of the lunakitty843 storefront.

46.     Admit.

47.     Admit that Mary Kay sent the cease-and-desist letter, deny any allegations therein.

48.     Defendants admit that they sell products originally manufactured by Mary Kay but deny that they are "Mary Kay products" in any way beside their original manufacture, and deny that the sales in any way infringe on Mary Kay's intellectual property rights.

49.     Defendants admit that they sell products originally manufactured by Mary Kay but deny that they are "Mary Kay products" in any way beside their original manufacture, and deny that the sales in any way infringe on Mary Kay's intellectual property rights.

50.     Defendants deny that they sell or ship any infringing products, and deny that they regularly conduct business in Texas.

51.     Admit.

52.     Admit.

53.     Denied.

### "Defendants Are Infringing the Mary Kay Trademarks by Selling Products Bearing the Mary Kay Trademarks That Are Not Subject To, Do Not Abide By, and Interfere With Mary Kay's Quality Control and Customer Service Requirements"

54.     Defendants admit that they are selling Mary Kay products through their eBay storefront, some of which are beyond their posted expiration date, but deny that this is in any way infringes upon Mary Kay's intellectual property or poses danger to consumers. Defendants reiterate that such expiration dates are arbitrary on the cosmetic products they sell.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

**"Defendants Are Infringing the Mary Kay Trademarks by Selling Products Bearing the Mary Kay Trademarks That Do Not Come With the Mary Kay Satisfaction Guarantee"**

61.    Defendants deny the implication that third-party sellers do not implement satisfaction guarantees substantially similar to those of Mary Kay.

62.    All of Defendants' sales come from Mary Kay consultants and were therefore subject to Mary Kay's quality control procedures until their second sale (the first being to the consultants). They are no less in Mary Kay's quality control procedures than any other Mary Kay product once they were sold to the consultant.

63.    Denied.

64.    Denied.

65.    Denied.

**"Defendants are Tortiously Interfering with Mary Kay's Contracts with Consultants"**

66.    Denied.

67.    Defendants are unaware of the precise terms of any contract between Mary Kay and its consultants, and therefore must deny.

68.    Denied.

69.    Defendants are unaware of the precise terms of any contract between Mary Kay and its consultants, and therefore must deny.

70.   Deny.

71.   Denied.

72.   Denied.

73.   Denied.

### "Mary Kay Has Suffered Substantial Harm as a Result of Defendants' Conduct"

74.   Denied.

75.   Denied.

76.   Denied.

### "FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. §§ 1114 and 1125(a)(1)(a)"

77.   Denied as stated previously.

78.   Defendants are unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

79.   Defendants are unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

80.   Defendants are unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

81.   Denied. See answer to para. 78, incorporated here.

82.   Denied. See answer to para. 78, incorporated here.

83.   Denied. See answer to para. 78, incorporated here.

84.  Denied.

85.  Denied.

86.  Denied.

87.  Denied.

88.  Denied.

89.  Denied.

90.  Denied.

## "SECOND CAUSE OF ACTION
### Unfair Competition
### 15 U.S.C. § 1125(a)(1)(a)"

91.  Defendants are unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

92.  Denied. See answer to para. 91, incorporated here.

93.  Denied. See answer to para. 91, incorporated here.

94.  Denied. See answer to para. 91, incorporated here.

95.  Denied.

96.  Denied.

97.  Denied.

98.  Denied.

99.  Denied.

100.  Denied.

101.   Denied.

102.   Denied.

103.   Denied.

104.   Denied.

## "THIRD CAUSE OF ACTION
### Trademark Dilution
### 15 U.S.C. § 1125(c)"

105.   Denied as stated previously.

106.   Defendants are unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

107.   Denied. See previous statement in para. 106, incorporated here.

108.   Denied. See previous statement in para. 106, incorporated here.

109.   Denied. See previous statement in para. 106, incorporated here.

110.   Denied. See previous statement in para. 106, incorporated here.

111.   Denied. See previous statement in para. 106, incorporated here.

112.   Denied.

113.   Denied.

114.   Denied. See previous statement in para. 106, incorporated here.

115.   Denied. See previous statement in para. 106, incorporated here.

116.   Denied. See previous statement in para. 106, incorporated here.

117.   Denied. See previous statement in para. 106, incorporated here.

118.   Denied.

119.   Denied.

120.   Denied.

121.   Denied.

122.   Denied.

123.   Denied.

124.   Denied.

125.   Denied.

## "FOURTH CAUSE OF ACTION
### Trademark Dilution
### Tex. Bus. & Com. Code § 16.103"

126.   The allegation is a legal assertion regarding a denied claim and thus denied.

127.   Defendants are unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

128.   Denied. See previous statement in para. 127, incorporated here.

129.   Denied. See previous statement in para. 127, incorporated here.

130.   Denied. See previous statement in para. 127, incorporated here.

131.   Denied. See previous statement in para. 127, incorporated here.

132.   Denied.

133.   Denied.

134.   Denied.

135.   Denied.

136.   Denied,.

137.   Denied.

138.   Denied.

139.   Denied.

140.   Denied.

141.   Denied.

142.   Denied.

143.   Denied.

## "FIFTH CAUSE OF ACTION
## Texas Common Law Trademark Infringement and Unfair Competition"

144.   Denied as stated previously.

145.   The allegation is a legal assertion regarding a denied claim and thus denied.

146.   Defendants are unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

147.   Denied. See previous statement in para. 144, incorporated here.

148.   Denied. See previous statement in para. 144, incorporated here.

149.   Denied. See previous statement in para. 144, incorporated here.

150.   Denied. See previous statement in para. 144, incorporated here.

151.   Denied.

152.   Denied.

153. Denied.

**154-168. These paragraphs do not appear in the copy of Plaintiff's complaint filed in PACER. It is possible that the pleading was improperly scanned and uploaded. For this reason, Defendants must deny all allegations based on lack of knowledge.**

169. Denied. Defendants are unaware of the existence or terms of any contracts between Mary Kay and its consultants.

170. Denied.

171. Denied.

**"CONDITIONS PRECEDENT"**

172. Defendants deny the claims and thus their individual elements and that conditions precedent have occurred.

**"REQUEST FOR ATTORNEYS' FEES"**

173. Denied.

**"JURY DEMAND"**

174. Defendants also demand a trial by jury.

**"PRAYER FOR RELIEF"**

175. Defendants deny that any remedy requested by Mary Kay is supported by facts or applicable law.

**II.     GENERAL DENIAL**

176. Defendants generally deny all of Mary Kay's claims, allegations of fact, and conclusions of law, except as expressly admitted herein.

## III.      ADDITIONAL FACTS

177.   Defendants' use of Mary Kay marks is to indicate original manufacture only; Defendants do not claim to be affiliated with Mary Kay, and no one using their site can reasonably think that they are affiliated.

178.    Customers using Mary Kay's cosmetics have already rejected Mary Kay's claim that only sales from its network consultants are legitimate and the assertion that transactions with off-network sellers equate inexorably to product purchases of low quality. As an example, nearly 50,000 Mary Kay products are listed for sale on Ebay at any given time. Thus, Mary Kay's customers have rejected the idea that quality product can be purchased only through the consultant network.

179.   Many of the Defendants' sales come from discontinued items which Mary Kay no longer sells but which consumers wish to continue buying because users with allergies have, through trial and error, determined that they can use a particular product without suffering an allergic reaction. When Mary Kay decides to discontinue such products, those users are faced with buying third-party product from sellers like Defendants, or changing brands completely, so Mary Kay was never going to retain those clients or those sales.

180.   Mary Kay's claim that a product magically transforms from genuine to not genuine as soon as it leaves the hands of one of its network consultants has been rejected by the cosmetic world and is facially illogical. Users often give the

products to their friends as gifts, and hold them for one reason or another for some time, or even buy the product for a friend who reimburses the buyer. According to Mary Kay, the product that is given from a buyer to a user is not genuine product in spite of the reality that the product has not changed. Or perhaps it is genuine unless the end user pays money to the middleman. "Genuineness" is not determined by whether a person pays money for a product or receives it as a gift.

## IV.    ATTORNEY FEES FOR EXCEPTIONAL CASE

181.    Defendants herein request a finding of an exceptional case and award attorney fees in accordance with applicable law.

## V.    AFFIRMATIVE DEFENSES

A. First Sale Doctrine

182.    As this district recognized in *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 852 (N.D. Tex. 2009), trademark infringement does not reach the sale of genuine goods bearing a trademark when a distributor resells trademarked goods without change. In *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 590 (5th Cir. 1993), the Fifth Circuit adopted the doctrine, stating "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent."

183.    First Sale Doctrine does not protect infringers who sell trademarked goods that are "materially" different from those sold by the trademark owner. *Martin's*

*Herend Imports, Inc. v. Diamond & Gem Trading USA, Company*, 112 F.3d 1296, 1302-03 (5th Cir. 1997).

184.    Defendants can show that they have not acted in ways to suggest affiliation with Mary Kay, separating this case from Weber and other Mary Kay cases.

185.    Defendants are aware that the First Sale Doctrine is not considered an affirmative defense, as plaintiffs bear the burden of showing that the doctrine does not apply, but lists it here just as a matter of practicality.

B. Unclean Hands

186.    Plaintiff's products are sold by a network of consultants controlled by Mary Kay in a pyramid scheme based on sales to those consultants, classifying such as 'retail sales' but is actually little more than sales to its consultants, who are assumed to sell product in accordance with Mary Kay's rules against online sales.

187.    Though end customers have a Satisfaction Guarantee, consultants have no recourse to return unneeded product to Mary Kay, leaving them to absorb inventory and no way to dispose of it because Mary Kay refuses to accept returns and pay refunds based on lack of use, lack of sale, or any alleged shelf-life.

188.    Mary Kay has adopted a three-year shelf life which is unrelated to actual shelf life but is convenient to reduce a consultant's ability to reduce inventory.

189.    Mary Kay's policies are designed to sheer its own consultants in this pyramid scheme while claiming to protect consumers, but with this suit and others

like it, Mary Kay seeks to employ the judicial system to continue the charade by browbeating anyone who dares to resell product sold to them from the unfortunate souls who were once sucked into promises made by Mary Kay recruiters.

190.   If Mary Kay was truly concerned about maintaining control, it could accept return of unused product, but it refuses. It is Mary Kay's policies in this regard which drive its ex-consultants to offer their inventories to third-party resellers like Defendants, who purchases these products through impersonal online sales as they are offered, and does not seek deliberate interference with current distributors.

191.   A well-proven unclean hands defense "will bar enforcement of a valid copyright when a plaintiff commits wrongdoing 'of serious proportions.'" *Saxon v. Blann*, 968 F.2d 676, 680 (8th Cir. 1992). The defense is available only where the plaintiff's misconduct is directly related to the merits of the controversy between the parties. *Mitchell Brothers Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979), cert. denied, 445 U.S. 917 (1980). Additionally, unclean hands can prevent the award of equitable relief. *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 794 (5th Cir. 1999).

192.   Defendants assert unclean hands as an affirmative defense against the claims of trademark infringement and injunctive relief based on Mary Kay's abusive policies regarding resell of the products it forces its consultants to keep even after it leaves the oppressive Mary Kay environment.

C. <u>Trademark Misuse</u>

193.    Trademark Misuse is a valid affirmative defense where Defendants can show that a plaintiff has used its marks in violation of the antitrust laws or has made misrepresentations to the public in an attempt to increase the scope of its marks." *Deere & Co. v. MTD Holdings, Inc.*, No. 00-CV-05936, 2004 WL 1794507, at *3(S.D.N.Y. Aug. 11, 2004).

194.    Mary Kay seeks to abuse the trademark system and making spurious claims of infringement when none exists, even when customers are aware that a product line that was produced by Mary Kay is no longer produced, and they still want to buy supposedly outdated products from Defendants and others similarly positioned.

195.    Mary Kay's actions in this regard are an attempt to steal the value of ex-consultant inventory and maintain an iron grasp on all downstream commerce of its products, rather than to use trademarks to facilitate the public's ability to distinguish among competing products with source identifiers.

196.    Mary Kay's attempts to extend trademark use beyond Congress's intent constitute trademark abuse and should prohibit the remedies sought by Mary Kay.

D. <u>Nominative Fair Use</u>

197.    This Court recognized in *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 854 (N.D. Tex. 2009), that nominative fair use allows use of a mark to "truthfully

identify another's goods or services in order to describe or compare its product to the mark holder's product," citing *Pebble Beach Company v. Tour*, *18 I, Ltd.*, 942 F. Supp. 1513 (S.D. Tex. 1996), aff'd as modified, 155 F.3d 526 (5th Cir. 1998).

198.   To succeed with the nominative fair use defense in this case, Defendants must show that they 1) only use the Mary Kay marks as necessary to identify products he is selling, and (2) does not take action suggesting affiliation, sponsorship, or endorsement by Mary Kay." *See Weber*, 601 F.2d at 854.

199.   Defendants use Mary Kay marks to let customers know what he is selling, and has never taken action to suggest an affiliation of any sort with Mary Kay, and thus the defense of Nominative Fair Use is appropriate in this case.

## VI.      COUNTERCLAIMS

200.   Defendants herein file their counter-claims against Mary Kay, adopting the same party identification, jurisdiction, and venue allegations as Mary Kay has alleged, except that in these counter-claims, Vu is identified and referenced as the Counter-Plaintiff and Mary Kay is the Counter-Defendants.

201.   Defendants herein add claims for violations of the Sherman Act over which this Court has jurisdiction pursuant to 15 U.S.C. 15, and 28 U.S.C. § 1337. They also allege claims pursuant to laws of the State of Texas under 28 U.S.C. § 1367(a) because it is so related to their federal claims which are within this Court's original jurisdiction, that the claims form part of the same case and controversy under

Article III of the United States Constitution.

202.    The allegations from the above paragraphs, particularly Section III entitled "Additional Facts" are herein incorporated.

A. <u>CLAIM 1 - DECLARATION OF TRADEMARK NON-INFRINGEMENT</u>

203.    Based on the above allegations, there exists a substantial controversy of sufficient immediacy and reality to warrant declaratory relief between the parties.

204.    The court should exercise its discretion pursuant to the Federal Declaratory Judgment Act and the Lanham Act to issue a declaratory judgment because:

   a. There exists no likelihood of confusion by the use of any reseller offering Mary Kay products on Ebay, Amazon, or other similar sales channels when a disclaimer is used to indicate that the reseller is not affiliated with Mary Kay as an authorized channel.

   b. Counter-Defendant has a pattern of this behavior, and will continue to abuse Counter-Plaintiffs and other Mary Kay resellers with harassing litigation until this Court or another issues this requested declaration.

   c. The requested relief will resolve all of the disputes between the parties, save a multitude of other parties numerous, time-consuming, expensive, and unnecessary proceedings and prevent economic waste as resellers and cosmetic buyers can take advantage of product that would be simply destroyed if Mary Kay had its way.

B. CLAIM 2 – SHERMAN ACT

205.    Counter-Plaintiffs incorporate all previous statements of fact and argument.

206.    Counter-Defendant Mary Kay's practice of bringing suit against any individual who resells Mary Kay product, irrespective of disclaimers or any other fact, based on illusory shelf-life arguments which Mary Kay should know is allowed under the First Sale Doctrine. Mary Kay's practice of threatening suit for behavior that its agents know, or should know, does not constitute trademark infringement, and focuses attention on small vendors who are unsophisticated and more likely to just pay Mary Kay some small amount and then leave the market, rather than to hire an attorney and defend their behavior as non-infringing in a foreign venue, as most are not in Texas.

207.    Counter-Defendant's behavior constitutes an attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, a violation of 15 U.S.C. § 2 leading to damages available under 15 U.S.C. § 15.

208.    Counter-Plaintiffs expect that Mary Kay will respond to these counter-claims by reference to the Noerr-Pennington Doctrine, but Counter-Plaintiffs herein assert that Mary Kay's suits are objectively baseless under the Supreme Court's established test for "sham" litigation, as the Counter-Plaintiffs can prove that Mary Kay's trademark claims are "objectively baseless in the sense that no

reasonable litigant could realistically expect success on the merits" and Counter-Defendant has stated its subjective intent to use the litigation to interfere directly with the business relationships of a competitor.

209.    Under the antitrust laws of the United States, Counter-Plaintiffs are entitled to recover their reasonable attorney's fees and three times his damages.

## C. CLAIM 3 - TEXAS FREE ENTERPRISE AND ANTITRUST ACT OF 1983

210.    Counter-Plaintiffs bring a claim pursuant to Tex. Bus. & Com. Code § 15.05(b), which states: "It is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce" (the "Act").

211.    Mary Kay is attempting with this case and others like it to avoid First Sale Doctrine by alleging a narrow exception as discussed supra, but the facile argument is a mere excuse which no Texas court should accept.

212.    Mary Kay's behavior is flagrant and ongoing, suing small businesses in Dallas and little more than a harassing suit in a foreign country for most of these resellers in an improper venue.

213.    Mary Kay's actions in these suits are therefore a violation of the Act. Tex. Bus. & Com. Code § 15.21 allows individuals to file suit on this basis for damages, tripled when the behavior is flagrant, as well as attorney fees.

## D. CLAIM 4 - REQUEST FOR PERMANENT INJUNCTION

214.    Based on the preceding allegations, there exists a need to protect Mary Kay

products from harassing lawsuits which prey upon unsophisticated Mary Kay product resellers, irrespective of disclaimers and highly responsive rating systems that encourage quality service. Every Ebay seller is a likely target for ongoing abusive behavior as Counter-Plaintiffs have shown in the facts of this case.

215.    The court should exercise its discretion to issue a permanent injunction to protect the public and Mary Kay resellers from Mary Kay's abusive attempts to use trademark law to eliminate downstream competition regarding the sale of products which have strayed from a consultant's direct control by a first sale.

## VII.        MOTION TO DISMISS

216.    Federal Rule of Civil Procedure 12(b)(2) governs the dismissal of an action based on lack of personal jurisdiction. Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

217.    In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

218.    Personal jurisdiction exists as either 'general' or 'specific'. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.2002). General jurisdiction exists over a

non-resident defendant when there is "continuous and systematic general business contacts that approximate physical presence in the forum state." Schwarzenegger, 374 F.3d at 801.

219.    Without a physical lasting presence in the state, sales and conferences alone are insufficient to establish general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

220.    In the absence of general jurisdiction, the court may still exercise specific jurisdiction over a non- resident defendant only when plaintiff shows that: (1) the defendant purposefully availed itself of the privilege of conducting activities in a state, thereby invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendant's state-related activities; and (3) the exercise of jurisdiction would be reasonable. *Easter v. American West Financial*, 381 F.3d 948, 960-61 (9th Cir. 2004).

221.    Purposeful direction is evaluated according to the three-part Calder test. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984)). The "test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. (citation and internal quotation marks omitted).

222.    Here, Counter-Plaintiffs/Defendants do not have "continuous and

systematic general business contacts" in Texas constituting a "lasting physical presence" sufficient to give this Court or any other Texas court general jurisdiction over Mary Kay's claims against them.

223.    Counter-Plaintiffs/Defendants additionally have committed no acts expressly aimed at the state of Texas or arising out of Texas activities sufficient to warrant specific jurisdiction. Counter-Plaintiffs/Defendants operate an indiscriminately national Ebay store that engages in no Texas-specific marketing or other attempts to conduct or promote business specifically within Texas.

224.    Therefore, Counter-Plaintiffs/Defendants do not have minimum contacts with the forum state such that the exercise of jurisdiction over them would not offend the Due Process Clause, and Mary Kay's complaint should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## VIII.        PRAYER for RELIEF

**Defendants/Counter-Plaintiffs seek the following relief:**

A. Counter-Plaintiffs request that this Court issue a declaration judgment that: "Resellers of Mary Kay product which avoid customer confusion are not subject to trademark infringement claims based on the First Sale Doctrine;"

B. Counter-Plaintiffs request the Court permanently enjoin Mary Kay from issuing cease-and-desist letters or suing Mary Kay resellers who have taken positive action to avoid customer confusion in their commercial actions;

C.  Counter-Plaintiffs request that this Court award triple the economic damages he has suffered, as well as reasonable attorney's fees pursuant to TEX. BUS. & COM. CODE § 15.21(a);

D.  Counter-Plaintiffs/Defendants request a judgment that Mary Kay take nothing;

E.  Counter-Plaintiffs/Defendants request that this Court dismiss Mary Kay's claims against them with prejudice in accordance with Federal Rule of Civil Procedure 12(b)(2); and

F.  Counter-Plaintiffs/Defendants request an award of reasonable attorney fees, costs, and further relief from Mary Kay as the Counter-Plaintiffs/Defendants may be entitled to in law or equity.

Respectfully submitted,

By:/s/ Warren V. Norred
Warren Norred, Texas Bar No. 24045094, warren@norredlaw.com
515 E. Border; Arlington, TX  76010
Tel. (817) 704-3984, Fax. (817) 524-6686
Attorneys for Counter-Plaintiffs/Defendants


**CERTIFICATE OF SERVICE** - I certify that on March 15, 2021, a true and correct copy of Defendants' Original Answer was served by the Court's ECF system to all counsel of record.

By:/s/ Warren V. Norred
Warren V. Norred